UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

UNITED STATES OF AMERICA,    )
                             )
        Plaintiff,           )        No. 6:12-CR-21-ART-HAI
                             )
v.                           )
                             )        RECOMMENDED DISPOSITION
MARCOS LOPEZ LOPEZ           )
                             )
        Defendant.           )
                             )

\*\*\*   \*\*\*   \*\*\*   \*\*\*

Defendant Marcos Lopez Lopez, through counsel, has filed a motion to suppress.  D.E. 16.  The motion is fully briefed and ripe for analysis, and has been referred to the undersigned.  D.E. 7-1 at 9.  For reasons discussed below, the Court recommends that the District Judge **DENY** Defendant's request for a hearing pursuant to *Franks v. Delaware*, 438 U.S. 154 (1978).  Additionally, the Court recommends that the District Judge **DENY** Defendant's motion to suppress.

## I. Background Information

On May 4, 2012, a federal grand jury returned an indictment charging Defendant Marcos Lopez Lopez with a violation of 18 U.S.C. § 922(g)(5)(A), or knowingly possessing a firearm while being an alien who is illegally and unlawfully present in the United States.  D.E. 1 at 1.  The firearm in question is a Jennings Model T380 .380 caliber pistol; state police officers recovered this firearm, along with some ammunition, from Defendant's vehicle pursuant to a warrant-backed search.  Defendant contests the veracity of that warrant and search in his motion to suppress.

The contested search of Defendant's vehicle arose out of an investigation of a missing juvenile.  On August 8, 2011, Chief Drew Woods of the Benham City Police Department sought authorization to search property described as a "2001 Cheverolet [sic] 4 door Blazer LT Silver in color VIN Number 1GNDT13WX12219141 with Temp Tag 6239226 belonging to Marco Lopez being impounded at Longsworth Garage in Baxter Kentucky."  D.E. 16-2 at 1.  The application sought judicial authorization to seize "[a]ny and all evidence that may constitute the prior, present, [or] future commission of a crime.  Included, but not limited to the kidnapping and rape of [the victim], a juvenile that was abducted on August 2nd, 2011."  *Id.* (redaction added).  In the supporting affidavit, Woods swore that:

> The victim ████████████ stated that on August 2nd, 2011, she was abducted from her residence at ████████████ in Benham, Kentucky.  ████████████ stated that Marco Lopez had forcefully abducted her from her home and placed her into the back of the 2001 Chevy Blazer that belongs to Lopez.  Lopez transported the victim to Grays Knob in the Blazer where the victim was held against her will.  At Grays Knob, the victim stated that she was held down by Marco Lopez, Gustabo Salina, and Ismail Lopez and sexually assaulted by the three men.  The victims cell phone was damaged by the above named men, so she could not call for help.  When police located the victim, she ran to them screaming for help.  At the hospital, the Doctors found evidence that the victim had been sexually assaulted.

*Id.* at 2 (redactions in filed copy).  The affiant also indicated that, following an independent investigation, "[w]itnesses were contacted and agreed that the above described vehicle belongs to Marco Lopez.  The Blazer was seized and taken to Longsworth Garage to preserve the evidence inside."  *Id.*

On August 8, 2011, after reviewing this application, a Harlan District Judge issued a search warrant authorizing the requested search and seizure.  D.E. 16-3 at 1.  Later that same day, Woods returned the executed warrant, which listed the following seized items: 1) 11 DNA hair sample cards; 2) 1 Fingerprint card; 3) 1 Jennings Model #1432275 380 caliber pistol; 4) 1

magazine loaded with 380 caliber shells; and 5) 1 box of 380 shells containing 16 shells.  *Id.* at 2.

Ultimately, the seizure of the firearm led to April 16, 2012 interviews of the victim, her mother,

and her sister, all of whom confirmed that they had observed Lopez carrying that weapon.  D.E.

16-10.  Defendant seeks to suppress both the Jennings pistol and the three witness statements

regarding his possession of that pistol as obtained in violation of the Fourth Amendment.  D.E.

16 at 5.

## II. Procedural Background

On July 9, 2012, Defendant, through counsel, filed a motion to suppress, arguing that

Defendant's Fourth Amendment rights were violated because "the Affidavit in support of the

search warrant contained information which the affiant knew or should have known was false

(that a kidnapping and rape had not occurred), and was in fact false."  D.E. 16 at 3.  In support of

his motion, Defendant attached the following documents: Uniform Citation (D.E. 16-1);

Affidavit for Search Warrant (D.E. 16-2); Search Warrant (D.E. 16-3); Report of Forensic

Laboratory Examination (D.E. 16-4); Agreed Order of Dismissal (D.E. 16-5); KYIBRS Report:

UOR2 Supplement (D.E. 16-6); August 2, 2011, Crime Supplement (D.E. 16-7); Victim

Statement (D.E. 16-8); KYIBRS Report: UOR2 Supplement and August 23, 2011, Crime

Supplement (D.E. 16-9); and Witness Interview Sheets (D.E. 16-10).

In order to assess the procedural posture and to determine the need for further briefing

and an evidentiary hearing, the Court scheduled an in-court status conference.  D.E. 17.  During

the status conference, the Court set a briefing schedule and afforded Defendant an opportunity to

file a supplemental memorandum addressing *Franks v. Delaware*, 438 U.S. 154 (1978).  D.E. 20.

The schedule also provided for response and reply time.  *Id.*

On July 23, 2012, Defendant filed a supplemental memorandum, D.E. 22, and two audio compact discs (CDs) containing grand jury testimony.  D.E. 24.  In this brief, Defendant, citing grand jury testimony and information from the exhibits filed with the original motion to suppress, asserted that he met the two-part *Franks* test and was entitled to a hearing on the veracity of the statements included in Woods's affidavit.  D.E. 22 at 3-5.

In accordance with the Court's briefing schedule, the United States filed its response in opposition on August 1, 2012.  D.E. 27.  The United States argued that Defendant was not entitled to a hearing to contest the validity of the affidavit because the statements therein were neither intentionally false nor amount to a reckless disregard for truthfulness.  *Id.* at 7-8. Alternatively, the United States argued that, even if the Court struck the allegedly false content from the affidavit, sufficient information remained to support a probable cause finding to support warrant issuance.  *Id.* at 9-10.

Because Defendant's supplemental memorandum and the United States' response both failed to sufficiently address the nature or elements of the state charges purportedly supporting warrant issuance, the Court, on August 2, 2012, ordered both parties to address the state charges at issue and whether, if the Court struck the alleged false content from the affidavit, the remaining content would support a probable cause finding.  D.E. 29.  Thus, the Court ordered Defendant to file a reply brief by August 9, 2012, as previously scheduled, and ordered the United States to file a narrowly-focused sur-reply brief by August 16, 2012.  *Id.* at 1.  Both parties complied with the Court's Order, *see* D.E. 31 (Reply) and D.E. 34 (Sur-Reply), and the matter is now ripe and submitted for a recommended disposition.

### III. Analysis

The Fourth Amendment commands that "no Warrant shall issue, but upon probable cause, supported by Oath or affirmation . . ." U.S. Const. amend. IV. A search warrant is supported by probable cause when "given all the circumstances set forth in the affidavit . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238 (1983). When reviewing whether a state court judge's decision to issue a warrant was supported by probable cause, the Court must review the affidavit "in a commonsense . . . manner, and . . . consider whether the totality of the circumstances supports a finding of probable cause . . ." *United States v. Woosley*, 361 F.3d 924, 926 (6th Cir. 2004) (citing *United States v. Greene*, 250 F.3d 471, 479 (6th Cir. 2001)). The Court must not engage in line-by-line scrutiny of the affidavit. *Id.* Furthermore, the Court affords great deference to the issuing judge's probable cause determination and will reverse that determination only in the event that the issuing judge "arbitrarily exercised his discretion." *Id.* In the end, the Court will set aside an issuing judge's probable cause determination only if the issuing judge lacked "'a substantial basis for finding that the affidavit established probable cause to believe that the evidence would be found at the place cited.'" *Id.* (quoting *United States v. Davidson*, 936 F.2d 856, 859 (6th Cir. 1991)).

In limited circumstances, the Court may evaluate evidence outside the four corners of a search warrant affidavit to determine the truthfulness of the factual statements contained in the affidavit. *Franks v. Delaware*, 438 U.S. 154, 155 (1978). Under *Franks*, a defendant challenging the veracity of statements included in an affidavit will be entitled to a hearing only if "the defendant makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant

5

affidavit, and if the allegedly false statement is necessary to the finding of probable cause . . ."
*Id.* at 155-56.   A supporting affidavit carries a presumption of validity; thus, a defendant's
"attack must be more than conclusory and must be supported by more than a mere desire to
cross-examine." *Id.* at 171.   Moreover, a defendant must allege "deliberate falsehood or . . .
reckless disregard for the truth, and those allegations must be accompanied by an offer of proof .
. . [that] point[s] out specifically the portion of the warrant affidavit that is claimed to be false . .
." *Id.*   Defendant must also supply "[a]ffidavits or sworn or otherwise reliable statements of
witnesses . . .," *id.*, and must prove falsity or reckless disregard for the truth by a preponderance
of the evidence. *United States v. Abboud*, 438 F.3d 554, 574 (6th Cir. 2006).

A defendant may also challenge the veracity of a warrant under *Franks* by alleging that
the affiant made a material omission. *See United States v. Fowler*, 535 F.3d 408, 415-16 (6th
Cir. 2008).   With such an allegation, "[t]he focus . . . falls on the question of whether the affiant
engaged in deliberate or reckless disregard for the truth in omitting critical information from the
affidavit." *United States v. Shaw*, No. 3:08-CR-24-H, 2009 WL 5734690, at *5 (W.D. Ky. Nov.
25, 2009).   However, such a challenge presents a "higher bar for obtaining a *Franks* hearing . . .
because of the 'potential for endless rounds of *Franks* hearings' due to potentially 'endless
conjecture about investigative leads, fragments of information, or other matter that might, if
included, have redounded to defendant's benefit.'" *Fowler*, 535 F.3d at 415-16 (internal
citations omitted); *see also United States v. Graham*, 275 F.3d 490, 506 (6th Cir. 2001) (noting
that "a *Franks* hearing is only merited in cases of omissions in 'rare instances'").   Therefore,
*Franks* only "protects against omissions that are *designed to mislead*, or that are made in *reckless
disregard of whether they would mislead*, the magistrate." *United States v. Colkley*, 899 F.2d
297, 301 (4th Cir. 1990) (emphasis original).

Significantly, *Franks* only applies to allegations of "deliberate falsity or reckless disregard . . . of the affiant, not of any nongovernmental informant." *Franks*, 438 U.S. at 171; *see United States v. Giancalone*, 83 F.2d 470, 475-76 (6th Cir. 1988) ("It is not enough for defendants to show that the affidavit contains false information; in order to obtain a *Franks* hearing, defendants must make a 'substantial preliminary showing' that the false statements originated with the government affiant, not with the informants, or that the government affiant repeated the stories of the informant with reckless indifference to the truth."). An affidavit's factual statements must be "'truthful' in the sense that the information put forth is believed or appropriately accepted by the affiant as true." *Franks*, 438 U.S. at 165. However, the truthfulness requirement does not require "that every fact recited in the warrant affidavit is necessarily correct, for probable cause may be founded upon hearsay and upon information received by informants, as well as upon information within the affiant's own knowledge that sometimes must be garnered hastily." *Id.* At its core, "*Franks* requires a demonstration of moral culpability: either an intentional falsehood or a falsehood arising from a reckless disregard for the truth." *United States v. Zorn*, No. 10-20077, 2010 WL 2287144, at *5 (E.D. Mich. May 27, 2010).

Once a defendant makes the preliminary showing that statements included in a search warrant affidavit or material omissions therefrom are either deliberately false or exhibit a reckless disregard for the truth, the Court must strike the offending statements from the affidavit and determine whether, in their absence, probable cause exists. *Franks*, 438 U.S. at 171-72. If the Court finds that the remaining material amounts to sufficient probable cause to support issuance of the search warrant, the defendant is not entitled to a hearing. *Id.* at 172. However, "if the remaining content is insufficient, the defendant is entitled, under the Fourth and

Fourteenth Amendments, to his hearing." *Id.* After conducting such a hearing, the Court will exclude "the fruits of the search" if the defendant proves "the allegation of perjury or reckless disregard . . . by a preponderance of the evidence" and if the extraction of the false material from the affidavit leaves "content . . . insufficient to establish probable cause . . ." *Id.* at 156.

### 1. Intentional Falsity/Reckless Disregard for the Truth

Defendant argues that the August 8, 2011 affidavit in support of a search warrant "either intentionally [included] falsified statements or statements that were included in the affidavit with reckless disregard for the truth." D.E. 22 at 2. Specifically, Defendant challenges the veracity of statements included by affiant Drew Woods related to the abduction and/or kidnapping of the minor victim, citing to a written statement made by the victim on August 3, 2011, that Defendant characterizes as an admission that "Marcos Lopez had not kidnapped her but that she had called him and asked him for a ride." *Id.* at 3. Similarly, Defendant characterizes the Narrative in the August 2, 2011 Crime Supplement as proof "that the officers involved in the investigation including Officer Drew Woods (who obtained the search warrant) were aware that [the victim] had recanted her story that she was abducted and kidnapped by Marcos Lopez." *Id.* Defendant also cites to grand jury testimony presented on September 19, 2011, as evidence that the minor victim recanted her kidnapping story. *Id.*

The Court has reviewed all of the supporting documents attached to Defendant's original motion (D.E. 16) and Defendant's supplemental memorandum (D.E. 22). Inconsistencies, both trivial and substantive, abound throughout the investigative record, and a combination of absent and arguably incorrect dates on the various reports and supplements presents quite a puzzle (with missing pieces) when attempting to build a chronology. And, in this case, chronology is key. Defendant is not entitled to a *Franks* hearing simply because the victim ultimately admitted that

8

she had lied about being kidnapped and raped by Lopez.  *Franks* makes clear that absolute truth

is not required.  *Franks*, 438 U.S. at 165.  Rather, a *Franks* analysis is concerned with the

truthfulness of the affiant "in the sense that the information put forth is believed or appropriately

accepted by the affiant as true."  *Id.*  Here, the Court must determine if Officer Drew Woods

knowingly and intentionally or recklessly included false information in his search warrant

affidavit; thus, the Court must decipher what the investigation had uncovered at the time he

submitted the affidavit to the issuing judge.

The Court recognizes that the record shows that state charges against Defendant based on

the victim's original statements were ultimately dropped due to a combination of the victim's

recantation, D.E. 24 (Exhibit B), and a DNA report eliminating Defendant as a suspect.  D.E. 16-

4; *see also* D.E. 16-5 (Agreed Order of Dismissal).  Specifically, the record indicates that, at

some point between August 15, 2011, and September 19, 2011, the victim admitted that she

willingly left her residence with Lopez and that Lopez did not rape her.[1]  However, the victim's

recantation came well after the August 8, 2011 search warrant application, and the record does

not support a finding that Woods knew that the victim was lying about the kidnapping and rape

allegations.  To reiterate, the Court's focus is on the veracity of statements made by the affiant in

his search warrant application, not on the truthfulness of the victim viewed in hindsight.  Woods

---

[1]     On August 15, 2011, Officer Ross testified before a grand jury.  He testified that the victim told police that Lopez had forced her into his vehicle on the night in question.  D.E. 24 (Exhibit C).  In a second grand jury proceeding on September 19, 2011, the same officer testified that the victim had recanted the kidnapping and rape allegations against Lopez.  *Id.* (Exhibit B).  At the beginning of the September grand jury proceeding, the following exchange occurred between the prosecutor and Officer Ross:

> Q. "Has this case been presented to the grand jury before?"
> A. "Yes, sir."
> Q. "And has there been circumstances that you guys have been aware of that changed since the last presentation?"
> A. "Yes, sir.  The juvenile involved in the case recanted her story."

*Id.*  Therefore, the victim's recantation did not occur before August 15, 2011.

9

could not reasonably be expected to be so prescient as to foresee the victim's recantation that came, at a minimum, more than a week after Woods submitted the affidavit. Therefore, Woods's averment that the victim "stated that Marco Lopez had forcefully abducted her from her home and placed her into the back of the 2001 Chevy Blazer that belongs to Lopez" is not an intentionally false statement.

The Court also notes that the record includes a Crime Supplement, dated August 2, 2011, that describes the events differently than other investigative reports. D.E. 16-7. In particular, the Narrative section states, "[The victim] advised us she was mad at her mother the night she left her home and had called Marco Lopez to come to her residence . . . in Benham to pick her up. She then walked outside barefoot and got in the hatch of Lopez blazer and laid down to avoid being seen by her parents or any neighbors." *Id.* at 1. While Defendant characterizes this Narrative as evidence of recantation, the Court views it as an early attempt by an investigating officer to memorialize statements made by the victim instead of the officer's deductive conclusion as to truth. In fact, the remaining reports, many of which post-date the August 2, 2011 Crime Supplement, reflect an investigation-based conclusion that the police believed that the victim ***had*** been kidnapped and raped by Defendant.

As noted above, the record has inconsistencies, but there are many indications that Woods believed or appropriately accepted the information he put in his affidavit at the time it was prepared. On the Uniform Citation documenting Lopez's August 3, 2011, arrest, the Post-Arrest Complaint box states, "Upon further investigation and obtaining statements from the victim it was determined that Marcos Lopez took the victim by force and held her against her will from her residence in Benham and took her to the residence in Grays Knob where he physically and sexually assaulted her." D.E. 16-1. Additionally, in a KYIBRS Report drafted (at

10

least in part) on or after August 8, 2011,[2] the Modus Operandi section states, "Here outside her residence [the victim] was forced into the hatch of Lopez's Chevy Blazer and then driven to Harlan where she against her own will was imprisoned . . . and sexually assaulted." D.E. 16-6 at 1. This same Report also states that the victim "was taken" from her home address, *id.*, and that the victim informed police that "Lopez forced her in the back hatch of his Chevy Blazer and told her no[t] to raise up." *Id.* at 2. Furthermore, this Report indicates that, when police arrived to the location where the victim was held, the victim "quickly opened the door in an hysterical man[ner] . . . [and] advised [police] that she had been sexually assaulted and pointed to the three men who allegedly forcefully held her down against her will and had sexual intercourse with her." *Id.* at 1. Even the victim's written statement, dated August 3, 2011, arguably led Woods to believe that Lopez had, at the very least, taken the victim further from her home than she had intended to go when she first invited Lopez to her home. D.E. 16-8 at 1 ("I got mad at my Mom and Marcos Lopez kept calling my Mom phone and I called him back to see if can take me for *a ride around the block.* Instead Marcos took me to Harlan to Gustavo house.") (emphasis added). Finally, the Court notes that, per an August 23, 2011 Crime Supplement, the Benham Police interviewed the victim again on August 4, 2011, reflecting that the investigation continued. D.E. 16-9 at 3.

Taken together, Defendant's submitted materials do not amount to a substantial preliminary showing that affiant Drew Woods knowingly and intentionally included false information in the affidavit supporting his request for a search warrant. Again, the Court notes that inconsistencies exist across the many individual reports drafted by at least two different

---

[2]     This Report as filed in the record is not dated. However, the second page of the Report contains a list of evidence that includes the Jennings pistol seized from Defendant's car on August 8, 2011. D.E. 16-6 at 2. Thus, at the earliest, the Report was drafted on August 8, 2011.

officers.  However, the police conducted a multi-day investigation leading up to the warrant request, and the record reflects that, by August 8, 2011, the investigators, to include affiant Woods, reasonably came to believe the victim's allegations of kidnapping and rape and continued in this belief until the victim recanted sometime after August 15, 2011.

Defendant also fails to make a substantial preliminary showing that affiant recklessly included false information regarding the minor victim's alleged abduction/kidnapping.  An affiant exhibits a reckless disregard for the truth "when 'viewing all the evidence, the affiant . . . entertained serious doubts as to the truth of his statements or had obvious reasons to doubt the accuracy of the information he reported.'"  *Peet v. City of Detroit*, 502 F.3d 557, 571 n.3 (6th Cir. 2007) (Holschuh, J., concurring in part and dissenting in part) (quoting *Wilson v. Russo*, 212 F.3d 781, 788 (3d Cir. 2000)).  As detailed above, multiple police documents either allude to a kidnapping/abduction scenario or state outright that the victim told police that Lopez had taken her from her home against her will.  Moreover, seven days after the application for the search warrant at issue, one of the investigating officers testified before a grand jury that Lopez had forced the victim into his vehicle and drove her from her residence.  D.E. 24 (Exhibit C).  While this event occurred after the affidavit was created, it nonetheless demonstrates that the Benham Police Department, to include affiant Woods, had no "serious doubts" or "obvious reasons to doubt" the victim's kidnapping allegation on August 8, 2011, when the affidavit was prepared. The inconsistencies in the August 2, 2011 Crime Supplement concerning the victim voluntarily getting in Lopez's vehicle do not sufficiently outweigh the remainder of the investigative record so as to amount to potential reckless disregard for the truth.  Therefore, Woods did not recklessly include false statements in the affidavit.

Even if Defendant had made a substantial preliminary showing that the affiant either intentionally or recklessly included false information in the search warrant affidavit, Defendant would still not be entitled to a hearing because the remaining content in the affidavit is sufficient to establish probable cause for searching Defendant's vehicle for evidence of kidnapping and rape.  Under Kentucky law,

> A person is guilty of kidnapping when he unlawfully restrains another person and when his intent is: . . . (b) To accomplish or to advance the commission of a felony; or (c) To inflict bodily injury or to terrorize the victim or another; or . . . (f) To deprive the parents or guardian of the custody of a minor, when the person taking the minor is not a person exercising custodial control or supervision of the minor . . .

KRS § 509.040(1)(b), (c), & (f).  A person "restrains" another person when he or she

> restrict[s] another person's movements in such a manner as to cause a substantial interference with his liberty by moving him from one place to another or by confining him either in the place where the restriction commences or in a place to which he has been moved without consent.  A person is moved or confined "without consent" when the movement or confinement is accomplished by physical force, intimidation, or deception, or by any means, including acquiescence of a victim, if he is under the age of sixteen (16) years, or is substantially incapable of appraising or controlling his own behavior.

KRS § 509.010(2).

Additionally, Kentucky defines rape in the first degree as "engag[ing] in sexual intercourse with another person by forcible compulsion," KRS § 510.040(1)(a), and categorizes it as a Class B felony.  KRS § 510.040(2).  The term "forcible compulsion" is defined as "physical force or threat of physical force, express or implied, which places a person in fear of immediate death, physical injury to self or another person, fear of the immediate kidnap of self or another person, or fear of any offense under this chapter."  KRS § 510.010(2).

Here, the allegedly false and/or recklessly included language goes to the issue of the victim's consent to get into Lopez's vehicle and comprises the first two sentences of the affiant's

information and observations.[3]  Once the allegedly false material is excised, the affidavit reads as
follows:

> Lopez transported the victim to Grays Knob in the Blazer where the victim was
> held against her will.  At Grays Knob, the victim stated that she was held down by
> Marco Lopez, Gustabo Salina, and Ismail Lopez and sexually assaulted by the
> three men.  The victims cell phone was damaged by the above named men, so she
> could not call for help.  When police located the victim, she ran to them
> screaming for help.  At the hospital, the Doctors found evidence that the victim
> had been sexually assaulted.

D.E. 16-2 at 2.  The affidavit also still includes the identifiers for the 2001 Chevy Blazer and

witness statements linking Defendant to that vehicle.  *Id.* at 1-2.

This information supports a finding of probable cause that evidence of kidnapping could

be located in Lopez's 2001 Chevy Blazer.  The first element – unlawful restraint – can be

inferred from two separate pieces of information.  Specifically, the victim was taken to Grays

Knob and held against her will, and the men who held her damaged the victim's cell phone,

thereby preventing a call for help.  In short, the affidavit presents facts to support a finding that

the victim experienced a "substantial interference with [her] liberty."  Secondly, the information

about the sexual assault supports a reasonable inference that Lopez and the others unlawfully

restrained the victim in order to accomplish the commission of a felony.  Because the statutory

elements of kidnapping are still present in the affidavit and because Lopez utilized his vehicle to

transport the victim to the place where she was allegedly restrained and sexually assaulted, the

---

[3]       Defendant characterizes the following statement as a recantation: "She then walked outside barefoot and
got in the hatch of Lopez blazer and laid down to avoid being seen by her parents or any neighbors." D.E. 16-7 at 1.
Per Defendant's argument, this statement shows that the victim voluntarily left her home with Lopez.  Therefore,
when deciding what language to strike from the affidavit, the Court eliminates only the portion of the affidavit
stating that the victim alleged that Lopez took her from home by force.  Thus, the Court strikes the following
language: "The victim ████████ stated that on August 2nd, 2011, she was abducted from her residence at
████████████ in Benham, Kentucky. ██████████ stated that Marco Lopez had forcefully abducted her from her
home and placed her into the back of the 2001 Chevy Blazer that belongs to Lopez." D.E. 16-2 at 2 (redactions in
filed copy).

truncated affidavit still presents sufficient evidence supporting probable cause to search Lopez's vehicle.

In short, for many reasons, Defendant has failed to make the required preliminary showing as to either prong of the *Franks* test. Therefore, Defendant is not entitled to a *Franks* hearing on the basis that Woods included deliberately or recklessly false information in his affidavit.

### 2. Material Omission Allegation

Defendant also alleges that Woods drafted an affidavit with a material omission,[4] thereby justifying a *Franks* hearing to determine why Woods chose to exclude evidence that the victim altered and/or recanted her allegations of kidnapping and rape. D.E. 31 at 6-8. Before Defendant will have an opportunity to make such a showing at an evidentiary hearing, he must 1) make a "substantial preliminary showing" that "the government affiant engaged in 'deliberate falsehood' or 'reckless disregard for the truth' in omitting information from the affidavit" and 2) show that probable cause would no longer exist if such omitted information were considered by the issuing judge. *United States v. Atkin*, 107 F.3d 1213, 1217 (6th Cir. 1997) (quoting *United States v. Bonds*, 12 F.3d 540, 568 n.26 (6th Cir. 1993)). An affiant makes an omission "with reckless disregard if an officer withholds 'a fact in his ken' that 'any reasonable person would have known . . . is the kind of thing the judge would wish to know.'" *Peet*, 502 F.3d at 571 n.3

---

[4]     In his reply brief, Defendant cites *Sykes v. Anderson*, 625 F.3d 294 (6th Cir. 2010), and states that "*Sykes* makes clear that omissions are material. How much more so when the officer knows the victim is lying." D.E. 31 at 8. This is a misreading of *Sykes*. In that case, Plaintiff brought an action under 42 U.S.C. § 1983 against investigating officers and the City of Detroit for wrongful arrest following a robbery investigation at Sykes's place of employment. Per the Sixth Circuit, because Sykes was arrested pursuant to a search warrant, she had to prove that the affiant, in his application for an arrest warrant, "'knowingly and deliberately, or with reckless disregard for the truth, made false statements or omissions that create[d] a falsehood' and 'such statements or omissions [we]re material, or necessary, to the finding of probable cause.'" *Sykes*, 625 F.3d at 305 (quoting *Wilson v. Russo*, 212 F.3d 781, 786-87 (3d Cir. 2000). In other words, Sykes had to prove materiality; the case does not stand for the proposition that all omissions are material.

(quoting *Wilson*, 212 F.3d at 788); *see also Colkley*, 899 F.2d at 301 ("*Franks* clearly requires defendants to allege more than 'intentional' omission in this weak sense. . . . *Franks* protects against omissions that are *designed to mislead*, or that are made in *reckless disregard of whether they would mislead*, the magistrate") (emphasis original).  To reiterate, a *Franks* hearing based on an alleged material omission is very rare.

Here, Defendant has failed to make a substantial preliminary showing that the affiant made a material omission in an attempt to mislead the judge into issuing a warrant to search Lopez's car for evidence of kidnapping and rape.  As previously noted, the affidavit states that the victim told police that "Marco Lopez had forcefully abducted her from her home and placed her into the back of [his] 2001 Chevy Blazer . . ."  16-2 at 2.  This statement is often repeated throughout the investigative documents attached to Defendant's motion to suppress.  Furthermore, the overall record indicates that police interviewed the victim more than once between finding her in the early hours of August 3, 2011, and requesting the search warrant at issue on August 8, 2011.  Thus, it is reasonable to conclude that the affiant's averment that the victim was abducted resulted from a consensus that developed over the course of the police investigation of her disappearance and assault rather than a plan to deceive the issuing judge.

Even if the affiant included a statement indicating that the victim "walked outside barefoot and got in the hatch of Lopez blazer and laid down to avoid being seen by her parents or any neighbors," D.E. 16-7 at 1, the rest of the affidavit would still support the Harlan District Judge's probable cause finding.  Yes, the inclusion of this statement could have arguably given the issuing judge pause; he would have had two differing descriptions of the initial events leading up to the victim's disappearance.  However, given the tone and content of the remaining statements, i.e. the holding her against her will, the damaged cell phone, the sexual assault, and

16

the screams for help, the abduction scenario arguably becomes a more reliable assessment of the early August events.  Moreover, even if the issuing judge concluded that she initially left her home with Lopez willingly, the remaining facts, at the very least, allow for an inference that an innocent encounter transformed into an unlawful restraint for purposes of committing a felony. Thus, a judge could reasonably examine an affidavit with the omitted language and still find probable cause to permit a search of Lopez's vehicle for evidence of kidnapping.  In short, Defendant has failed to meet the high burden necessary to obtain a *Franks* hearing based on an omission.

### IV. Conclusion

For reasons discussed above, the Court **RECOMMENDS** that the District Judge **DENY** Defendant's request for a *Franks* hearing and **DENY** Defendant's motion to suppress.

The Court directs the parties to 28 U.S.C. § 636(b)(1) for appeal rights concerning this Recommended Disposition, issued under subsection (B) of that statute.  As defined by section 636(b)(1) and Federal Rule of Criminal Procedure 59(b), within fourteen days after being served with a copy of this Recommended Disposition, any party may serve and file written objections to any or all portions for de novo consideration by the District Court.  The parties should consult the aforementioned statute and rule for specific appeal rights and mechanics.  Failure to object in accordance with Rule 59(b) waives a party's right to review.

This the 13th day of September, 2012.

Signed By:

*Hanly A. Ingram*

United States Magistrate Judge